**UNITED STATES of America**

v.

**Mauricio ROSAL et al.**

United States District Court
S. D. New York.
Dec. 2, 1960.

S. Hazard Gillespie, Jr., New York City, U. S. Atty., and Stephen E. Kaufman, Asst. U. S. Atty., New York City, for the Government.

Henry K. Chapman, New York City, by Irving Rader, New York City, for defendant.

HERLANDS, District Judge.

This two-count indictment charges the defendant Mauricio Rosal and others with violating and conspiring to violate certain of the narcotic laws. Title 21, Sections 173 and 174, United States Code Annotated.

The defendant Rosal (hereinafter referred to as the defendant) has moved to dismiss the indictment on the ground, as stated in the notice of motion, "that at the time of the arrest of the defendant, Mauricio Rosal, on October 3, 1960, in the City, State and Southern District of New York, he was the Ambassador Extraordinary and Plenipotentiary from the Republic of Guatemala to Belgium and the Netherlands and was in transit from the said countries through the United States to his homeland, and was consequently immune from arrest and prosecution, * * *."

The principle of diplomatic immunity has been given "a broad and liberal interpretation" by the United States. See United States v. Melekh, D.C.S.D. N.Y.1960, 190 F.Supp. 67.

The growth in the number of sovereign nations and international organizations has produced a corresponding increase in the number of foreign officials entitled to either general or limited immunity. Within our borders there is what may broadly be described as an international community with immunity of about 7,000 persons. See Barnes, Diplomatic Immunity From Local Jurisdiction: Its Historical Development Under International Law And Application In United States Practice, The Department of State Bulletin, vol. XLIII, no. 1101 (August 1, 1960) 173, 181. To this figure must be added the approximately 2,000 foreign consular officers, whose immunities and privileges are defined by treaties and conventions with their respective homelands. Barnes, supra.

■ Furthermore, under the common law of nations, diplomats-in-transit (although not accredited to the United States) are entitled to immunity when they are in the United States en route between their diplomatic posts and their respective home countries. See authorities cited in United States v. Melekh, 190 F.Supp. 67, supra.

■ The history of international law shows that, from time to time, the claim of immunity must be adjudicated in various contexts. When an appropriate issue is duly raised before the Court, it is within the area of judicial competence and responsibility to determine whether the claim of diplomatic immunity is valid. Such is the case at bar.

The only issue now before the Court is a narrow question of fact: At the time of his arrest on October 3, 1960, was the defendant in the United States en route from his diplomatic post in Belgium and the Netherlands to the Republic of Guatemala, his homeland? It is undisputed that, on said date, the defendant was a diplomatic agent of Guatemala to Belgium and the Netherlands.

The evidence relevant to the above factual question will now be summarized.

In behalf of the defendant there has been submitted the defendant's own four-page affidavit, sworn to November 15,

1960. In that affidavit the defendant states that on October 2, 1960, he left his embassy in Brussels, Belgium "to travel to my [his] home in Guatemala, where I [he] had to transact some important business" (paragraph 5); that he "took the Sabena Air Line from Brussels to Paris"; that, from Paris, he "took a Pan-American Airways plane to New York, Idlewild Airport" (paragraph 6); that he "purchased a round trip ticket"; that the return date was left "open" because he "did not know the exact date of" his "return to Belgium" and although he "did not anticipate that the business in Guatemala would require me [him] to remain more than a few days, however as a diplomatic representative, I [he] know[s] that one can never tell." (paragraph 6). The defendant further states that, in response to a question asked by the customs inspector at Idlewild Airport, he told the inspector that he was going "to Guatemala in a day or so." (paragraph 8). The defendant reiterates (paragraph 16): " * * * I was travelling through this country in transit from one of the countries to which I was accredited, Belgium, to my home country, the Republic of Guatemala."

The Court offered the defendant the opportunity to present any additional evidence by way of affidavits and exhibits and to have an oral hearing. The defendant's attorney has advised the Court on the record that the defendant does not desire to submit any additional proof or to have a hearing.

In behalf of the prosecution, the following items have been submitted:

1. The affidavit of Anthony Pohl, sworn to November 28, 1960. Mr. Pohl, a federal Narcotic Agent, states (p. 1) that the defendant told him (in a conversation had on October 10, 1960) "that he had intended to return to Paris on October 4, 1960" for the purpose, inter alia, of delivering $10,000 to the wife of co-defendant Tarditi in Paris.

2. The affidavit of Mario Cozzi, sworn to November 28, 1960. Mr. Cozzi, a federal Customs Agent, states (pp. 1, 2) that on two occasions on October 3, 1960, the defendant told him that "he was presently in the United States on personal business"; and "that he had planned to return immediately to Paris."

3. The affidavit of Stephen E. Kaufman, sworn to November 25, 1960. Mr. Kaufman, an Assistant United States Attorney, refers to the defendant's reservation with the Pan American Airways System on Flight 114 which was to leave New York City at 8:30 p. m. on October 4, 1960 for Paris, France.

4. The supplemental affidavit of Mr. Kaufman, sworn to November 30, 1960, to which are attached four affidavits and various exhibits, hereinafter summarized.

5. The affidavit of James A. Walsh, sworn to November 29, 1960. Mr. Walsh is the Chief Security Officer of the Plaza Hotel, 59th Street and Fifth Avenue, New York 19, N. Y. He has produced a photostatic copy of the hotel registration card (Exhibit "A") that the defendant signed on October 2, 1960, when he registered. The defendant was assigned to Room No. 944. The telephone number for the room occupied by the defendant from October 2 to October 3, 1960 was Plaza 9–3000, Extension 944.

6. The affidavit of Volker Weller, sworn to November 29, 1960. Mr. Weller is the Manager of Passenger and Telephone Sales for Pan American World Airways, Inc. He has produced a photostatic copy of the reservation card (Exhibit "A") for the defendant, showing that a reservation was made on October 3, 1960, at 9:00 a. m. for the defendant, who then gave his telephone number as Plaza 9–3000, Room 944. The card shows that the defendant had identified himself as the Ambassador of Guatemala to Belgium and that he reserved a seat on Pan American Flight No. 114, Economy Class, leaving New York on October 4, 1960, to Paris, with departure time at 8:30 p. m. The defendant requested that he be placed on the waiting list

for a first-class seat, if it should become available for the same flight.

7. The affidavit of Victor Manuel Rivera Toledo, sworn to November 30, 1960. Mr. Toledo is the First Secretary of the Guatemalan Consulate General in New York City. In his affidavit, Mr. Toledo states, in part: "Mr. Mauricio Rosal was not expected to arrive in the United States or in Guatemala on or about October 2, 1960 in connection with any official diplomatic business. Also, while he was in this country at that time, Rosal made no contact with our consulate. Subsequent to Rosal's arrest, General E. Ingeniero Miguel Ydigoras Fuentes, the president of Guatemala, has discredited Rosal as a diplomat of Guatemala."

8. The affidavit of Samuel Sheres, sworn to November 30, 1960. Mr. Sheres is an Assistant United States Attorney. Attached to Mr. Sheres' affidavit as Exhibit "A" is an eleven-page Q-and-A statement of the defendant, stenographically recorded on October 3, 1960. In that statement, the defendant admitted that he had come to New York only to transact personal business (p. 4); that he had registered at the Plaza Hotel (pp. 5, 9); and that he had made a reservation to return to Paris, France on October 4, 1960 (p. 10), where he was supposed to deliver $11,000 to the wife of his codefendant Tarditi (p. 7).

The evidence establishes beyond doubt that the defendant, when in New York on October 3, 1960, did not intend to return to Guatemala; that he had not come to New York for the purpose of returning to Guatemala; that, in truth and in fact, he had made a reservation to return to Paris on October 4, 1960; and that he had come to and was in New York solely on personal, non-diplomatic business, at the conclusion of which he had planned to return to Paris, France.

■ The defendant was not a diplomat-in-transit within the rule of international law granting immunity to a diplomat en route between his official post and his homeland. The defendant did not and does not have immunity against the indictment herein and any proceedings in connection therewith.

The defendant's motion to dismiss the indictment as against him on the ground of immunity is denied.

So ordered.